OPINION
{¶ 1} Defendant-appellant, Jermaine A. Curtis, appeals from the conviction and sentence of the Common Pleas Court of Marion County, Ohio. Finding none of the arguments advanced on appeal to have merit, we affirm the decision below.
 {¶ 2} The pertinent facts and procedural history of the case are as follows. On the night of July 25, 2001, the appellant and several co-defendants engaged in a plan to rob a Marion resident, Kevin Kelley, of money and drugs. The robbery was to take place the next night at Kelley's home. Around midnight, July 26, 2001, a neighbor of Kelley's notified the police of the suspicious activities of the appellant and his co-defendants. The appellant and co-defendant Roshawn Littlefield had been seen lurking in the bushes outside of Kelley's apartment. Littlefield was wearing dark clothing with a hood over his head. He was also wearing a backpack.
 {¶ 3} The police found the appellant and co-defendants Littlefield and Elizabeth Myers in a parked vehicle roughly one block from Kelley's apartment. Searching the vehicle with the consent of the owner, co-defendant Myers, the police discovered a backpack on the floorboard in front of Littlefield's seat. A Luger Tech 9 firearm was recovered from the backpack.
 {¶ 4} The appellant was placed under arrest and was subsequently indicted on August 9, 2001, on five counts, including conspiracy to commit aggravated robbery in violation of R.C. 2923.01, a second degree felony. The appellant was indicted along with three co-defendants, two of whom pleaded guilty and testified in his trial. Co-defendant Littlefield filed a motion to suppress and a motion to sever his trial from his co-defendants on August 27, 2001. On September 21, the appellant filed a motion to sever his case from the cases of his co-defendants. A hearing was held on October 10, 2001, and continued on October 12, 2001. At the hearing, the motion to sever was voluntarily dismissed by both the appellant and Littlefield. The court overruled the motion to suppress on November 5, 2001 and set the case for trial on December 13, 2001.
 {¶ 5} On November 8, 2001, the State filed a motion requesting that a trial date no later than November 19, 2001 be scheduled or in the alternative for the court to clarify its reasons for not commencing the trial until December 13, 2001. On November 21, 2001, the trial court filed a judgment entry setting forth its basis for postponing the trial until December 13, 2001. The appellant filed a motion to dismiss on December 5, 2001, based upon a violation of his right to a speedy trial. The motion was overruled the following day. A jury trial commenced on December 13, 2001, and resulted in a finding of guilt on all counts.[1]
The appellant was sentenced on January 14, 2002, to an aggregate term of fourteen years. The appellant now appeals asserting five assignments of error.
 ASSIGNMENT OF ERROR NO. I {¶ 6} "The trial court committed an error of law in overruling appellant's motion to dismiss."
 {¶ 7} In his first assignment of error, the appellant contends that he was not brought to trial in accordance with Ohio's speedy trial statutes and the failure to do so violated his statutory, state and federal constitutional rights to a speedy trial.
 {¶ 8} Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to a speedy trial.[2] A person charged with a felony must be brought to trial within two hundred and seventy days after his arrest.[3] Each day the accused is in jail in lieu of bail is counted as three days in computing time under 2945.71(E). In order for the offense to be discharged on this basis, the defendant must make a motion prior to or at the commencement of the trial.[4]
 {¶ 9} Once a criminal defendant shows that he was not brought to trial within the permissible period, the accused has presented a prima facie case for release.[5] The State then has the burden "to produce evidence demonstrating [the defendant] was not entitled to be brought to trial within the limits of R.C. 2945.71(E)."[6] The State accomplishes this by showing that the tolling provisions of R.C. 2945.72 apply.[7]
However, "these tolling provisions are to be strictly construed against the State."[8] Among the reasons listed are delays necessitated by a motion by the accused, "any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]"[9] Although these events toll speedy trial time, they "do not unconditionally extend the time limit in which an accused must be brought to trial, but, rather, this limit is `merely extended by the time necessary in light of the reason for the delay.'"[10] Furthermore, when the trial court grants a continuance other than on the accused's own motion, it must file an entry providing the reason(s) for the continuance prior to the expiration of the statutory speedy trial time period.[11]
 {¶ 10} The appellant was incarcerated on July 27, 2001. Applying the triple-time calculation of R.C. 2945.71(E), the appellant should have been tried no later than October 24, 2001. However, he was not brought to trial until December 13, 2001, 140 days after he was arrested. Thus, the appellant has presented a prima facie case of a violation of his speedy trial rights.
 {¶ 11} Before the expiration of the speedy trial time, the appellant filed two motions, which would toll the speedy trial clock. On September 21, 2001, the appellant filed a motion to sever. A joint-hearing on the motion to sever and co-defendant Littlefield's motions to sever and to suppress was heard on October 10 and continued on October 12. At the joint-hearing, the appellant joined co-defendant Littlefield's motion to suppress. The trial court rendered its decision on the motions on November 5, 2001.
 {¶ 12} Pursuant to R.C. 2945.72(E), any delay caused by a motion the accused files tolls the running of the statutory speedy trial deadline. The appellant's motion to sever stopped the hands of the speedy trial clock on September 21, 2001. The clock did not run again until November 5, 2001, when the trial court issued a judgment entry denying the motion to suppress. As long as the trial court's disposition occurs within a reasonable time, a defendant's motion to suppress tolls the speedy trial clock from the time the defendant files the motion until the trial court disposes of the motion.[12] The appellant challenges the reasonableness of the time the trial court spent in deciding the motion to suppress. This Court has already determined that the twenty-four day delay in deciding the motion to suppress was reasonable, taking special consideration of the fact that the same court was presiding over a lengthy aggravated murder case contemporaneously with the present case.[13]
 {¶ 13} In total, the speedy trial clock was tolled forty-six days, from the September 21, 2001, filing of the appellant's motion to sever until November 5, 2001, when the decision on the motion to suppress was rendered. Thus, the appellant's speedy trial time was extended to December 9, 2001. The continuance issued by the trial court set the trial date four days beyond the statutory speedy trial time period.
 {¶ 14} The resolution of this case depends upon whether the trial court's continuance was reasonable and requires us to consider the particular facts and circumstances of this case.[14] We conclude that the trial court's sua sponte continuance was reasonable within the ambit of R.C. 2945.72(H). The trial date was continued to December 13, 2001, by the trial court's November 5, 2001 judgment entry. On November 21, 2001, the trial court explained that the original October 22, 2001 trial date was not available due to an aggravated murder trial that was still in progress. Further, we note, the appellant's motion to suppress was still pending on this date. The court also stated that December 13, 2001 was the earliest date on which the Defense Counsel, the Prosecuting Attorney, and the court were available. Counsel for both parties were urged to see whether an earlier trial date was possible. The State filed motions on November 8 and 30, 2001 requesting an earlier trial date, but the December 13 date was the earliest available. We find nothing inherently unreasonable in using the next available trial date as the length of the continuance. In accordance with Mincy, an entry providing the reasons for the continuance was issued before the December 9, 2001 expiration of the statutory speedy trial time period.[15] The appellant has not demonstrated any prejudice resulting from the court's continuance, and we find the purpose and necessity for the delay were reasonable.
 {¶ 15} The appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II {¶ 16} "It was plain error for the jury instructions not to include the definition of possession."
 ASSIGNMENT OF ERROR NO. IV {¶ 17} "It was plain error for the jury instructions not to include a limited instruction as to the prejudicial value of the introduction of the appellant's prior criminal history."
 {¶ 18} Because the appellant's second and fourth assignments of error pertain to the jury instructions, we will address them together. With his second assignment of error, the appellant asserts that the trial court improperly instructed the jury with respect to Counts III, IV, and V. Relying on R.C. 2945.11, the appellant contends that the trial court, in charging the jury, failed to state "* * * all matters of law necessary for the information of the jury in giving its verdict."
 {¶ 19} The appellant argues that the trial court, when instructing the jury, should have defined the word "possessed." The record reflects that the court defined "have" as "possessed" when instructing the jury on Count II, conspiracy to commit aggravated burglary. Also, the court's instruction on Counts III (unlawful possession of a dangerous ordinance) and V (having a weapon while under disability) referenced the earlier definition of "have." No definition of the term "possessed" was given, however. In instructing the jury on Count IV, there was no reference to the terms "have," "had," or "possessed." The record demonstrates that the appellant raised no objection to the jury instructions when they were given.
 {¶ 20} It is well settled that a failure to object to jury instructions before the jury retires, absent plain error, constitutes a waiver.[16] The plain error doctrine requires a court to take note of plain errors or defects affecting substantial rights, even though such error was not brought to the attention of the trial court.[17] The doctrine is to be used cautiously and only under exceptional circumstances to prevent a manifest miscarriage of justice.[18] Plain error will not be found with regard to improper jury instructions unless the outcome of the trial would clearly have been different.[19]
 {¶ 21} The Revised Code does not provide a technical definition of the term "possessed" for the offenses for which Curtis was charged.[20]
However, the court stated that the term "have" means "possessed," thus the reverse holds true. Namely, "possessed" means "to have." Both terms are words of common usage that need not be defined for the jury.[21]
Furthermore, the appellant was prosecuted as an aider and abettor. Therefore, the State was not required to prove that the appellant had physical control over the firearm. It was sufficient for the State to prove that Curtis acted with the same criminal knowledge as co-defendant Littlefield and that he knew that Littlefield had the firearm concealed in his backpack.[22] Upon our review of the record and the appellant's argument, we find that the appellant has not shown how the outcome would have been different if the trial court had defined the term "possessed."
 {¶ 22} Accordingly, Curtis' second assignment of error is overruled.
 {¶ 23} The appellant, in his fourth assignment of error, asserts that the trial court erred by not giving a limiting instruction to the jury. Again, no objections were raised to the jury instructions, so we review this assignment of error under the plain error doctrine discussed above.
 {¶ 24} The appellant was charged with Having Weapons While Under Disability, which requires the State to introduce evidence of the appellant's prior conviction for a violent felony.[23] During the trial, the appellant's parole officer testified that the appellant was on parole for a robbery conviction. Later, while delivering the jury its charge, no instruction was given restricting the use of the prior conviction only as an element of the offense charged. The jury was not directed that they may not consider the prior conviction "to prove the character of the defendant in order to show that he acted in (conformity)(accordance) with that character."[24]
 {¶ 25} Although it is possible that a jury could misuse evidence, the trial court is not required, without a demand from the defendant, to give a limiting instruction when it charges the jury. Evid.R. 105 provides: "When evidence which is admissible * * * for one purpose but not admissible * * * for another purpose is admitted, the court, upon requestof a party, shall restrict the evidence to its proper scope and instruct the jury accordingly." (Emphasis added.) As stated in Evid.R. 105, it was incumbent upon the appellant to have requested the court to give the limiting jury instruction. No such request was made; therefore, the trial court did not err in its jury instructions.
 {¶ 26} The appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III {¶ 27} "The trial court erred when it overruled the appellant's motion for acquittal due to lack of/insufficient evidence and conflicting testimony."
 {¶ 28} Pursuant to Crim.R. 29(A), appellant's trial counsel moved for acquittal at the conclusion of the State's case. The trial court overruled the motion. The appellant now asserts that the trial court's decision was erroneous and that the State did not prove every element of the crimes for which the appellant was charged beyond a reasonable doubt.
 {¶ 29} This Court has recognized that "Crim.R. 29(A) requires the court, upon motion of the defendant, to enter a judgment of acquittal of one or more offenses charged in an indictment if the evidence is insufficient to sustain a conviction of the offense or offenses."[25]
However, such an acquittal may not be granted "if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt."[26]
 {¶ 30} When ruling on a motion for judgment of acquittal pursuant to Crim.R. 29, the trial court is required to construe the evidence most strongly in favor of the state, the party against whom the motion has been directed.[27] The inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[28]
 {¶ 31} The appellant offers two reasons to support its assertion that the State failed to prove its case beyond a reasonable doubt. First, the appellant argues that he was merely present and did not participate in, assist, encourage, or strengthen the alleged conspiracy. Second, he argues that there were too many inconsistencies in the testimony presented. Our review of the record, however, reveals ample evidence of the appellant's active participation in each of the crimes for which he was convicted. The appellant has failed to cite, with the slightest specificity, to those portions of the record that he deems inconsistent.
 {¶ 32} Viewing the evidence in a light most favorable to the prosecution, we find that any rational juror could have found the essential elements of the crime to be proven beyond a reasonable doubt. Therefore, the appellant's third assignment of error is without merit and is overruled.
 ASSIGNMENT OF ERROR NO. V {¶ 33} "The trial court erred in allowing the dismissal of the only potential African-American juror because the State's `race neutral explanation' was not adequate and violated the appellant's rights to equal-protection under the Fourteenth Amendment to the Ohio and United States Constitution."
 {¶ 34} At the conclusion of the jury selection and before voir dire continued with the prospective alternate jurors, defense counsel expressed the desire to have a Batson inquiry as to the dismissal of the sole African-American member in the venire. By this time, the prospective juror had been released and was no longer present. After the State explained its reasons for striking the prospective juror, the trial court dismissed the defense counsel's objections for not being "terribly" timely and because it found that the State had an adequate race-neutral explanation for its use of the peremptory challenge. In his fifth assignment of error, the appellant contends that the trial court erred.
 {¶ 35} In Batson v. Kentucky, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race."[29] Thus, Batson
established that a criminal defendant can demonstrate a violation of his equal protection rights pursuant to the Fourteenth Amendment to the United States Constitution by a showing that the prosecutor's use of peremptory challenges at the defendant's trial was used to intentionally exclude members of the defendant's race.
 {¶ 36} Batson delineated a three-step procedure for evaluating claims of racial discrimination in peremptory strikes. "First, the opponent of the strike must make a prima facie showing of discrimination. Second, the proponent must give a race-neutral explanation for the challenge. Third, the trial court must determine whether, under all the circumstances, the opponent has proven purposeful racial discrimination."[30]
 {¶ 37} To determine if a violation of the appellant's constitutional rights has occurred, we must apply the test delineated inBatson to the facts of the case. As noted above, only one African-American person was part of the jury venire and the prosecutor exercised one of his peremptory challenges to exclude this potential juror. Defense counsel timely objected to the prosecutor's exercise of this peremptory prior to the jury being sworn.
 {¶ 38} The first determination usually is whether or not the appellant established a prima facie case of intentional discrimination.[31] However, the issue of whether or not the appellant established a prima facie case of intentional discrimination need not be the subject of our review. InHernandez v. New York, the United States Supreme Court Stated: "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."[32]
 {¶ 39} Here, the prosecutor offered an explanation and the trial court ruled on the question of intentional discrimination in response to the appellant's Batson objection. Thus, we proceed to the second step of the Batson inquiry to determine whether the prosecutor presented to the trial judge a race-neutral explanation for the strike.
 {¶ 40} A discussion between the judge, defense counsel, appellant, and the prosecutor occurred as follows:
 {¶ 41} "Mr. ZEIGLER: Mr. Lowther's expressed the desire to have a Batson inquiry as to the dismissal of the one black juror. I don't know if that inquiry should be before or after you swear in the panel.
 {¶ 42} "* * *
 {¶ 43} "THE COURT: We have done this before, we can do it briefly up here. For future reference, you need to do it as the challenge is issued.
 {¶ 44} "MR. SLAGLE: * * * I would set forth a race neutral basis for the challenge.
 {¶ 45} "Mr. Deas, you know, is a young individual. In fact, he was 18 years old, at the time he was on the panel there were four jurors that were 28 and under, which is the age range of this, you know, these defendants. And in fact, three of those four were males. Mr. Deas is also a single individual which also worked to identify with these defendants. He also has minimal ties to this community, he's lived at his current residence for four months. He worked out of town, works in Mansfield, and he also, you know, he had only lived in Marion for six years before that.
 {¶ 46} "With that combination of factors, it was our intention to exercise a peremptory challenge against Mr. Deas. And I would also state that the makeup of the jury at the time was predominantly male, and his excuse was — helped to keep some balance in the jury.
 {¶ 47} "THE COURT: Alright. We will find, first of all, the inquiry is not terribly timely. Second of all find that that's an adequate race neutral explanation for the use of the peremptory challenge."
 {¶ 48} The second step of the Batson process does not require an explanation that is persuasive or plausible.[33] "[T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. * * * It is not until the third step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination."[34]
Moreover, Batson noted that "the prosecutor's explanation [in the second step] need not rise to the level justifying exercise of a challenge for cause."[35]
 {¶ 49} The prosecutor's proffered explanation in this case — that he struck the juror because of his young age, he was single, and his minimal ties to the community — is race neutral and satisfies the prosecution's step two burden of articulating a nondiscriminatory reason for the strike. Thus, the inquiry properly proceeded to step three, where the court found that the prosecutor was not motivated by discriminatory intent.
 {¶ 50} A trial court's decision on the ultimate question of intentional discrimination (step three) is a finding of fact and is to be afforded great deference by a reviewing court.[36] Such a decision will not be overturned unless clearly erroneous.[37]
 {¶ 51} We find no error in the trial court's finding that the prosecutor tendered a race-neutral explanation of the peremptory used for the African-American juror because the explanation given was not particular to any race.
 {¶ 52} The appellant's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. VI {¶ 53} "Trial counsel was ineffective due to his failure to impeach State's witnesses"
 {¶ 54} For his final assignment of error, the appellant maintains that he was deprived of effective assistance of counsel. In Stricklandv. Washington, the United States Supreme Court set forth a two-prong test that a defendant must meet in order to prevail on a claim of ineffective assistance of counsel.[38] First, the defendant must show that the counsel's performance was deficient, and, second, the defendant must show that counsel's deficient performance resulted in prejudice at trial.[39]
A claim of ineffective assistance of counsel may be dismissed for failure to satisfy either prong.[40] In asserting his ineffective assistance of counsel claim, the appellant must overcome the presumption that a licensed attorney is competent and that his decisions constitute sound trial strategy.[41]
 {¶ 55} Here, the appellant contends that he was denied hisSixth Amendment right to a fair trial by his counsel's alleged failure to investigate the facts of the case and for his counsel's failure to impeach inconsistent testimony during the trial proceedings. The appellant has set forth no evidence in the record in support of these allegations. However, the record does establish thorough cross-examination by the appellant's trial counsel of nearly every witness called by the State. Such cross-examination reveals that the appellant's trial counsel had a command of the facts.
 {¶ 56} We find that the appellant has not satisfied either prong of the Strickland test. Accordingly, the appellant's final assignment of error is without merit and is hereby overruled.
 {¶ 57} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW, P.J., and BRYANT, J., concur.
[1] A unanimous jury convicted the appellant of the following crimes: Count I, Conspiracy to Commit Aggravated Robbery (R.C. 2923.01), a second degree felony; Count II, Conspiracy to Commit Aggravated Burglary (R.C.2923.01), a second degree felony; Count III, Possession of a Dangerous Ordinance (R.C. 2923.17(A)), a fifth degree felony; Count IV, Carrying a Concealed Weapon (R.C. 2923.12(A)), a fourth degree felony; and Count V, Having Weapons While Under Disability (R.C. 2923.13(A)(2)), a third degree felony. There was a six year firearm specification to Counts I, II, III and V (R.C. 2921.144 and 2929.14(D)).
[2] State v. Ladd (1978), 56 Ohio St.2d 197, 200.
[3] R.C. 2945.71(C)(2).
[4] R.C. 2945.73(B).
[5] State v. Caudill (Dec. 2, 1998), 3rd Dist. No. 05-97-35, 1998 WL 833729.
[6] State v. Butcher (1986), 27 Ohio St.3d 28, 30-31.
[7] See Caudill, supra.
[8] Id., citing State v. Singer (1977), 50 Ohio St.2d 103, 109.
[9] R.C. 2945.72(E), (H).
[10] State v. Arrizola (1992), 79 Ohio App.3d 72, 75, quoting Committee Comment to H.B. 511.
[11] State v. Mincy (1982), 2 Ohio St.3d 6, 8.
[12] Arrizola, at 76.
[13] State v. Littlefield (June 29, 2002), 3rd Dist. No. 9-02-03.
[14] R.C. 2945.71; see State v. King (1996), 114 Ohio App.3d 669.
[15] Mincy, 2 Ohio St.3d at 8.
[16] State v. Williford (1990), 49 Ohio St.3d 247, 251.
[17] See Crim.R. 52(B); State v. Long (1978), 53 Ohio St.2d 91;State v. Smith (June 27, 1995), Franklin App. No. 940APA12-1702.
[18] Long, supra, at 94.
[19] Id., paragraph 2 of the syllabus; Williford, supra, at 253; Statev. Cooperrider (1983), 4 Ohio St.3d 226, 227; State v. Joseph, (1995),73 Ohio St.3d 450.
[20] See R.C. 2901.01.
[21] State v. Riggins (1986), 35 Ohio App.3d 1, 8.
[22] See R.C. 2923.03; See, also, State v. Chapman (1986),21 Ohio St.3d 41; State v. Widner (1982), 69 Ohio St.2d 267.
[23] R.C. 2923.13(A)(2).
[24] 4 Ohio Jury Instructions (2002) 32, § 402.61(4).
[25] State v. Adkins (2000), 136 Ohio App.3d 765, quoting Statev. Picket (1996), 108 Ohio App.3d 312, 314.
[26] Id.
[27] State v. Fyffe (1990), 67 Ohio App.3d 608.
[28] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[29] (1986), 476 U.S. 79, 89.
[30] State v. White (1999), 85 Ohio St.3d 433, 436.
[31] For a detailed discussion of the requirements for setting forth aprima facie case of intentional discrimination, see Batson,476 U.S. at 96.
[32] Hernandez v. New York (1991), 500 U.S. 352, 359. See, also,White, supra, at 437.
[33] Purkett v. Elem (1995), 514 U.S. 765, 767.
[34] Id., citations omitted.
[35] Batson, 476 U.S. at 97.
[36] Id., fn. 21.
[37] Hernandez v. New York, 500 U.S. 352.
[38] (1984), 466 U.S. 668. See, also, State v. Murphy (2001),91 Ohio St.3d 516.
[39] Ohio v. Jones (2000), 90 Ohio St.3d 403, 407, citing Strickland, supra.
[40] Strickland, 466 U.S. 668.
[41] Id., at 689.